UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICHOLAS E. CARDUCCI,

                              Petitioner,

-vs-

THE PEOPLE OF THE STATE OF NEW YORK,

                              Respondent.
_____

DECISION AND ORDER

6:17-CV-6882 CJS

## INTRODUCTION

Petitioner Nicholas Carducci ("Carducci" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State County Court, Erie County, of Burglary in the Second Degree, for which he was sentenced, as a second violent felony offender, principally to a determinate term of imprisonment of ten years.[1]   The Amended Petition (ECF No. 4) asserts that the conviction was unconstitutionally obtained for various reasons discussed further below, including that the prosecution failed to introduce sufficient evidence of Petitioner's intent to commit Burglary in the Second Degree.  For the reasons explained below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

The reader is presumed to be familiar with the facts of this action taken from the state-court record.  For purposes of this Decision and Order, the Court briefly sets forth the following factual summary taken from Respondent's brief, to which Petitioner has not objected, supplemented with the Court's own footnotes:

_____

[1] Certificate of Conviction dated January 13, 2020.

On November 29, 2011, Rebecca Kasinski returned to her home, located at 71 Burwell Avenue in the Village of Lancaster, along with her young son. She noticed the smell of cigarette smoke, so she looked around to see where it might be coming from. When she looked through the door that led from the mud room into the garage, a man was crouching behind the door. He was wearing a dark jacket[2] with white lettering. Kasinski took her son and ran outside, heading to her neighbor's house at 58 Burwell. Two men were working on the property. Kasinski told them that there was a man inside her house, and she called 911. T 51-60; numbers preceded by "T" refer to pages of the trial transcript. The mud room also had a door leading into the back yard, which was usually left unlocked, and a door leading into the rest of the home. T 37, 50.[3]

While she was at 58 Burwell, Kasinski watched her house across the street. After five or ten minutes, she saw a man walking down another neighbor's driveway,[4] wearing the same dark jacket with the white lettering. As the man climbed into a gray Pontiac Grand Am that was parked in front of the house, Kasinski told the workers, "that's him." T 61-66. Daniel Holley, who was one of the workers, identified the man as defendant, and the man drove away quickly.[5] T 189-191.

Lieutenant Patrick Young received a dispatch of a possible prowler at 71 Burwell. Young responded immediately and was informed that the suspect had left in a dark gray Pontiac Grand Am. He predicted the suspect's path of flight and soon spotted the vehicle, which defendant was driving. After pulling defendant over, Young asked him what he was doing on Burwell. Defendant replied that he was a mason and was checking up on a previous job.[6] He did not answer when Young asked who the homeowner was. T 240-248. The police obtained a search warrant for defendant's vehicle. Detective Keith Kerl recovered a small prybar sticking out from

---

[2] This same article of clothing has been described in the record as a jacket, sweatshirt and t-shirt (long-sleeved).

[3] The door from outside, which one would access from the back yard, entered into an enclosed, furnished and carpeted breezeway or "mudroom" through which one could access doors leading into either the residence or the garage. The door leading into the residence had been locked, while the door leading to the garage had not been locked.

[4] Petitioner took a circuitous route, through the victims' back yard, onto a nearby street running behind the victims' house, and then back through another neighbor's property, to return to his car, even though his car was parked in front of the victims' home. Trial Tr. at pp. 188–191, 213, 215. As Petitioner walked by one of the workmen who had gone to the residence in response to the homeowner's cries that someone was in her house, he falsely stated that he was looking for a lost dog. Tr. 206.

[5] The evidence viewed in the light most-favorable to the prosecution indicates that upon being identified by Mrs. Kasinski, Petitioner ran quickly to his car and drove away at a high rate of speed. Trial Tr. at pp. 212–213.

[6] At trial, Officer Young testified that when he first pulled Petitioner over, Petitioner told him that he was coming from his "shop on Harris Hill Road," which did not make sense since Petitioner had been traveling in the wrong direction to be coming from that location. Trial Transcript at p.247. Additionally, Petitioner evidently referring to the shop of his employer, Magic Stone, but Petitioner had been laid off from that job a month earlier. Young next asked Petitioner what he had been doing on Burwell Avenue, and Petitioner stated that he had been "checking up on a job from a previous month." Trial Tr. at p. 248.

underneath the back seat,[7] and Detective Thomas Bulera [("Bulera")] recovered a black shirt with white lettering from the floor of the front passenger's seat. T 425-427, 568.[8]

Detectives Bulera and Jeffrey Smith investigated the crime scene at 71 Burwell, where they observed marks along the doorjamb.[9] Bulera made a cast of the marks using a technique called Microsil, and photographs were taken of the door jamb, of the Microsil cast, and a comparison between the marks and the pry bar recovered in defendant's vehicle. T 491-501, 591-595; People's Exhibits 51-65. John Kasinski, Rebecca's husband and fellow homeowner, [a mechanical engineer who had personally installed the door in 2009,] testified that the marks [on the door jamb] had not been there before.[10] T 734.

Defendant was a former employee of Magic Stone, a masonry restoration company which had recently done work at 71 Burwell. However, the company's owner, Kaied Morshed, could think of no reason why defendant[, who had been laid off from the company a month earlier,] would have been at that address on November 29, 2011. T 329, 332-337.

Resp't Mem. of Law (EFC No. 7) at pp. 3–5.

---

[7]A prybar-type tool and a screwdriver were found in the passenger compartment of Petitioner's car. The prosecution did not argue that either tool matched the marks on the residence door. There was also a bag of tools in the trunk, but it does not appear that Petitioner would have had time to open the trunk between the time he left the scene and the time he was stopped by police moments later. Nevertheless, the evidence at trial was that there were no marks on the door before Petitioner entered the victim's mudroom, but there were marks on the door immediately after he left. The jury could reasonably conclude that Petitioner had attempted to pry open the victim's door, even though no tool was found that matched the marks on the door. In that regard, the record indicates that Petitioner had plenty of opportunity, between the time Mrs. Kaskinski saw him crouching in her garage and the time he walked out to his car through an adjoining yard, if he had wanted, to dispose of any object that he might have used to make the marks on the residence door. There was testimony from a detective that he had looked around the area the Petitioner likely traveled but found nothing. However, Petitioner's exact movements during that period were not known.

[8] Petitioner had removed the sweatshirt he had been wearing, while in the garage, after driving away from the premises. In that regard, one of the workman who had observed Petitioner both before Petitioner drove away from the premises and after Petitioner was returned to the home by police for a show-up identification testified at trial that by the time of the show-up, Petitioner had removed the sweatshirt he had been wearing earlier and was wearing a t-shirt, even though it was a cold and rainy November day. Trial Tr. at pp. 192–193, 249.

[9] At trial, Officer Smith testified that he saw "marks" along the edge of the residence door while investigating on the day of the incident. Trial Transcript at p. 306-308. Mr. Kaskinski also testified that upon arriving at his home following Petitioner's arrest he observed new "pry marks" on the door, around the lock and deadbolt, and that the deadbolt, which had operated fine the night before, was damaged. Trial Tr. at pp. 734, 737.

[10] Mr. Kasinski testified that in 2009 he personally installed the "brand new" door leading into the home, on which the marks were found. Trial Tr. at p. 723.

During a jury trial at which Petitioner did not testify,[11] the prosecution case included testimony from Detective Bulera, who had taken photographs and made molded impressions of the indentions that had been found on the door leading into the main area of victim homeowner's residence.  In that regard, Bulera did not testify as an expert and did not indicate that the gouges on the door matched the prybar tool that had been found in the passenger compartment of Petitioner's car.  Rather, the prosecution introduced the photographs, molded impressions and tool for the jury to compare.  Moreover, the trial court repeatedly instructed the jury that Bulera was not an expert on tool marks.  Regarding jury instructions, defense counsel asked that in addition to the standard pattern jury instruction for Burglary in the Second Degree, the Court instruct the jury as follows:

> If the jury finds that – like a missing witness charge – if the jury finds that the People did not call or pursue witnesses regarding the issue of intent that were available to them, that the jury can consider that as evidence regarding their [(the Prosecution's)] burden as it goes to intent.  . . .  The People have the burden of proving the case beyond a reasonable doubt.  One of the elements the People must prove is intent.  If the jury finds that the People failed to pursue evidence and call witnesses that it should have relating to that element, such failure can be considered  when determining whether they have met their burden.

Trial Tr. at p. 862.[12]  The trial court declined to give such an instruction, and defense counsel did not object to the final instruction that the court gave.

---

[11] The strategy of Petitioner's defense counsel was essentially to paint the police investigation as sloppy and incomplete, such as by suggesting that DNA testing should have been performed, and by suggesting that upon investigating the scene, the police had quickly determined that there was no evidence of intent to commit a crime in the dwelling, but because the homeowners were friends of the brother of the Lancaster Police Chief, the officers railroaded Petitioner for burglary.  Implicit in that narrative was either that the evidence of attempted forced entry into the residence (the gouge marks on the door) had been create by police after the fact, or that the marks had been there already but the Kasinskis had not noticed because their entryway as dimly lit.  Defense counsel also suggested that the marks might have been made by a sex offender who was working across the street.

[12] This proposed instruction related to the defense theory that the prosecution had done a shoddy job in failing to obtain DNA evidence testing or paint transfer evidence testing.

The jury convicted Petitioner of Burglary in the Second Degree, Penal Law § 140.25[2]. At sentencing, Petitioner maintained his innocence, claiming that had gone to the victims' property "with good intentions" to seek work, but that things had gone "terribly wrong."[13] Petitioner, though, did not explain the particulars of how things had gone terribly wrong, such as why he had entered the victims' garage, or why, upon the female homeowner's return, he had crouched inside the garage, behind a door, with his face averted.[14]   Petitioner's mother also spoke at sentencing, and indicated that she believed her son was innocent since Petitioner had told her that he had gone to the property because the homeowners had "offered" a masonry job to his employer and he was going to attempt to underbid his employer for the same work.[15]   In that regard, Petitioner reportedly told his mother that the homeowners had "liked his work."[16] However, Petitioner's employer testified at trial that Petitioner had not actually been involved in the masonry work performed for the homeowners, though he had helped clean up the work site several days later, and that his company did not have any further masonry work pending with the homeowners as of the date of the burglary.[17]   Additionally, Mr. Kasinski  had testified that he had been unhappy with the work that had been performed and would  not have recommend Magic Stone to anyone.[18]

Following his conviction and sentencing Petitioner filed a direct appeal raising the following arguments: 1) the burglary conviction was not supported by sufficient evidence which denied Petitioner a fair trial and due process in violation of the Fifth and Fourteenth Amendments

---

[13] Sentencing Tr. at p. 21.
[14] Mrs. Kaskinski only happened to see Petitioner crouching in her garage because after arriving home and going inside the main part of the home she returned to the breezeway to investigate the odor of cigarette smoke, and observed Petitioner through the glass window of the door leading into the garage.  A rational factfinder could easily conclude from the evidence that Petitioner had been in the process of attempting to force open the residence door when Mrs. Kaskinski arrived unexpectedly, whereupon he hid in the garage.
[15] Sentencing Tr. at p. 22.
[16] Sentencing Tr. at p. 22.
[17] Trial Tr. at pp. 334–336.
[18] He indicated that Magic Stone's workers had damaged the newly-installed roof and stained the house's siding.

to the U.S Constitution; 2) the trial court abused its discretion in denying Petitioner's request to exclude testimony from Detective Bulera regarding tool marks on the residence door, which denied a fair trial; 3) the prosecutor engaged in misconduct that denied Petitioner a fair trial and due process; 4) the trial court denied Petitioner a fair trial and due process by "refus[ing] to instruct the jury that intent to enter the dwelling, standing alone, could not satisfy the 'intent' to commit a crime therein element of burglary, and by giving a confusing jury instruction; and 5) the sentence was unduly harsh and excessive.

The New York State Supreme Court, Appellate Division Fourth Department, denied Petitioner's appeal, stating in pertinent part:

> Defendant appeals from a judgment convicting him upon a jury verdict of burglary in the second degree (Penal Law § 140.25[2]). We reject defendant's contention that the People violated County Court's pretrial ruling that a detective who investigated the burglarized house could not present opinion testimony because he was not an expert in tool mark identification. The People adhered to the ruling inasmuch as the detective did not render an opinion whether the tool marks on the frame of the door leading from the mud room into the house matched the burglar tools found in defendant's vehicle; he testified as a lay witness about his observations and actions, which was proper (see generally *People v. Hoppe*, 47 A.D.2d 571, 572, 362 N.Y.S.2d 611). In addition, the court did not err in admitting the other evidence of the tool marks, including photographs thereof (*see People v. Marini*, 114 A.D.2d 686, 687–688, 494 N.Y.S.2d 560, *lv. denied* 67 N.Y.2d 653, 499 N.Y.S.2d 1050, 490 N.E.2d 566). Defendant did not preserve his further contention that he was prejudiced when the prosecutor elicited significant testimony from the detective regarding his scientific background and education despite the court's ruling that the detective was not permitted to testify as an expert (see CPL 470.05[2] ), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15[6][a]; *People v. Valdez*, 53 A.D.3d 172, 173–176, 861 N.Y.S.2d 288, *lv. denied* 11 N.Y.3d 836, 868 N.Y.S.2d 610, 897 N.E.2d 1094).
>
> ***
>
> We [also] reject defendant's contention that the evidence is legally insufficient to establish that he intended to commit a crime when he unlawfully entered the house (*see generally People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672). The jury was entitled to infer beyond a reasonable doubt that

defendant intended to commit a crime inside the building based on the evidence of the fresh tool marks on the frame of the door leading from the mud room into the house, defendant's possession of burglar tools, his unexplained presence on the premises, and his actions and statements when confronted by the homeowner, the witnesses from whom the homeowner sought help, and the police (*see People v. James*, 114 A.D.3d 1202, 1205, 980 N.Y.S.2d 645, *lv. denied* 22 N.Y.3d 1199, 986 N.Y.S.2d 420, 9 N.E.3d 915; *People v. Freeman*, 103 A.D.3d 1177, 1177–1178, 958 N.Y.S.2d 853, lv. denied 21 N.Y.3d 912, 966 N.Y.S.2d 363, 988 N.E.2d 892; *People v. Vivenzio*, 103 A.D.2d 1044, 1044–1045, 478 N.Y.S.2d 438). Contrary to defendant's further contention, viewing the evidence in light of the elements of the crime as charged to the jury (*see People v. Danielson*, 9 N.Y.3d 342, 349, 849 N.Y.S.2d 480, 880 N.E.2d 1), we conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 N.Y.2d at 495, 515 N.Y.S.2d 761, 508 N.E.2d 672).

Contrary to defendant's contention, we conclude that he was not deprived of a fair trial by prosecutorial misconduct during the opening statement (*see People v. Castro*, 281 A.D.2d 935, 935–936, 722 N.Y.S.2d 854, *lv. denied* 96 N.Y.2d 860, 730 N.Y.S.2d 34, 754 N.E.2d 1117), and that the alleged instances of prosecutorial misconduct on summation were either "a fair response to defense counsel's summation or fair comment on the evidence" (*People v. Walker*, 117 A.D.3d 1441, 1442, 986 N.Y.S.2d 284, *lv. denied* 23 N.Y.3d 1044, 993 N.Y.S.2d 258, 17 N.E.3d 513 [internal quotation marks omitted]; *see People v. Hassem*, 100 A.D.3d 1460, 1461, 953 N.Y.S.2d 444, *lv. denied* 20 N.Y.3d 1099, 965 N.Y.S.2d 795, 988 N.E.2d 533).

We further conclude that the court properly declined to give defendant's requested supplemental jury charge inasmuch as an adverse inference instruction was not warranted in this case (*see generally People v. Durant*, 26 N.Y.3d 341, 347, 23 N.Y.S.3d 98, 44 N.E.3d 173; *People v. Matos*, 138 A.D.3d 426, 427, 27 N.Y.S.3d 571, *lv denied* 27 N.Y.3d 1135, 39 N.Y.S.3d 117, 61 N.E.3d 516). In addition, defendant failed to preserve for our review his contention that the court's instructions on the burglary count were erroneous inasmuch as he did not request that the court omit the "or remains" language from its proposed charge and failed to object to the charge as given on that ground (*see People v. Smith*, 140 A.D.3d 1396, 1398, 33 N.Y.S.3d 580; *People v. Bonner*, 256 A.D.2d 1219, 1220, 684 N.Y.S.2d 364, *lv. denied* 93 N.Y.2d 871, 689 N.Y.S.2d 433, 711 N.E.2d 647). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15[6][a]; *Smith*, 140 A.D.3d at 1398, 33 N.Y.S.3d 580). Contrary to defendant's further contention, this case does not

involve the possibility that the jury rendered a nonunanimous verdict, i.e., that defendant was convicted on different theories of the burglary as presented in the court's charge, inasmuch as the evidence adduced here could not have established that defendant entered the house lawfully and formed the intent to commit a crime while remaining therein (*cf. People v. Graves*, 136 A.D.3d 1347, 1348, 25 N.Y.S.3d 477, *lv. denied* 27 N.Y.3d 1069, 38 N.Y.S.3d 840, 60 N.E.3d 1206).

*People v. Carducci*, 143 A.D.3d 1260, 38 N.Y.S.3d 678, 679-680 (4th Dept. 2016), *leave to appeal denied*, 28 N.Y.3d 1143 (Jan. 5, 2017).

Petitioner then filed the subject action alleging a single ground for relief, namely, ineffective assistance of trial counsel.  However, Petitioner later acknowledged that claim was unexhausted, and so filed the Amended Petition, which alleges the following four grounds for relief: 1) the conviction for Burglary in the Second Degree was not supported by sufficient evidence of his intent to commit a crime in the dwelling; 2) the trial judge abused her discretion by allowing a non-expert witness (Bulera) to testify about his training and expertise as a scientist; 3) the prosecutor committed prosecutorial misconduct "throughout [the] entire trial" by engaging in unspecified conduct that "had a strong negative impact on the jury"; and 4) the trial court erred in failing to properly instruct the jury "that intent to enter a dwelling standing alone does not satisfy the intent to commit a crime therein" and by giving a charge that "misled the jury." Am. Pet., ECF No. 4 at pp. 1-2.

Respondent's papers (ECF No. 7) argue that the Petition lacks merit for the following reasons: 1) there was legally-sufficient evidence to support the conviction; 2) state-law evidentiary claims are not cognizable in a Section 2254 habeas proceeding, and, in any event, Bulera did not testify as an expert; 3) there was no prosecutorial misconduct; and 4) the jury-instruction claim is procedurally barred, and, in any event, the trial court properly instructed the jury.

Petitioner filed a one-page non-substantive reply (ECF No. 8) that merely reiterated his belief that he is entitled to relief.

## DISCUSSION

### Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Evidentiary Hearing Not Required

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

### Section 2254 Principles

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id*. (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or

> involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, ⸺ U.S. ⸺, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).  As just mentioned, regarding claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.

> A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case.  To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

"A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*,

502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311-312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Habeas petitions may not simply repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

<u>The Legal Sufficiency of the Evidence</u>

As Respondent correctly notes, "Petitioner claims that the evidence was legally insufficient to prove his intent to commit a crime inside the dwelling."[19]  However, the Court disagrees with Petitioner.

A claim that a conviction was against the weight of the evidence is a state-law argument that is not cognizable in a federal § 2254 habeas action, while a claim that the conviction was unsupported by sufficient evidence will only succeed in such an action where the evidence was insufficient to permit any rational juror to find guilt beyond a reasonable doubt:

> [T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, *see, e.g., Correa v. Duncan*, 172 F.Supp.2d 378, 381 (E.D.N.Y.2001), *Douglas v. Portuondo*, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002); *see also Estelle*, 502 U.S. at 67–68, 112 S.Ct.

---

[19] Resp't Mem. of Law, ECF No. 7 at p. 6.

475, and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir.2007).

*McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011); *see also*, *Blackshear v. Artus*, No. 917CV143MADDJS, 2019 WL 6837719, at *3 (N.D.N.Y. Dec. 16, 2019) ("Review of a conviction as against the 'weight of the evidence' is a product of New York state statute and, therefore, merely a state-law issue for which no cognizable federal issue is presented.").

In the instant case, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found Petitioner guilty of Burglary in the Second Degree (Penal Law § 140.25[2]) beyond a reasonable doubt.[20]  Consequently, Petitioner's insufficient-evidence claim is denied.

<u>The Alleged Improper Testimony by Detective Bulera</u>

Petitioner next alleges that the trial judge abused her discretion by allowing the prosecutor to question Bulera about "his expertise as a 'scientist'" even though the court had already ruled that Bulera could not testify as an expert witness concerning the "tool marks" on the residence door.  The Petition alleges that Bulera went "on and on about his knowledge and training in a[n] area where his testimony was supposed to be limited to 'non-expert' testimony regarding

---

[20] *See, e.g., Love v. Smith*, No. CV-08-3746BMC, 2009 WL 2422384, at *3 (E.D.N.Y. Aug. 6, 2009) ("A petitioner seeking relief based on insufficient evidence must meet a high legal threshold. The Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). All inferences must be drawn in favor of the prosecution. *See Fama v. Commr. of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir.2000).  In considering the sufficiency of the evidence supporting a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999).") (footnote omitted).

evidence he handled."   In that regard, Petitioner is referring to Bulera's testimony about his educational background, employment history and training, namely, that he had a Bachelor of Arts degree, had worked as filtration technician for a biotech company, owned a patent, and had been trained as a police crime scene evidence technician and fire investigator. Trial Transcript at pp. 483-487.  However, Respondent contends that Bulera's testimony was not improper, and that state-law evidentiary issues are not cognizable in a Section 2254 habeas action in any event.

The Court agrees with Respondent that Petitioner is not entitled to habeas relief on this point.  As a preliminary matter, the Court disagrees with Petitioner's contention that Bulera was improperly allowed to testify "on and on" concerning his "expertise as a 'scientist.'" Rather, Bulera's testimony concerning his educational background, employment and training was relatively brief in duration, spanning just five pages of the transcript.   Moreover, neither the prosecutor nor Bulera himself referred to Bulera as a scientist.   Indeed, based on the Court's review of the record, the only person to suggest that Bulera was a scientist was defense counsel. *See*, Trial Transcript at p. 505 ("He is a scientist almost.").  Additionally, the prosecution adhered to the trial court's ruling *in limine* and did not attempt to elicit any testimony from Bulera that the tool marks on the residence door matched the pry bar found in Petitioner's car.

Additionally, Respondent is correct that alleged errors involving a state court's evidentiary rulings are generally not reviewable in a Section 2254 habeas proceeding, unless they affect the fundamental fairness of the state proceeding:

> Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review. *See Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir.2006) (citing *Crane v. Kentucky*, 476 U.S. 683, 689, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (noting the Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts")). Therefore, unless

the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable in this context. *See DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir.2004) (per curiam) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")); *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (holding that introduction of improper evidence does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice."). Such unfairness will only result where: ["][T]he erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, [and] highly significant.["] *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985) (internal quotation marks omitted).

*McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 72–73 (2d Cir. 2011) (footnote omitted).  Here, the alleged error involving testimony about Bulera's qualifications did not affect the fundamental fairness of Petitioner's trial.

Moreover, Petitioner's claim on this point is barred by the procedural default doctrine.  In that regard, trial defense counsel, who generally objected at every opportunity, did not object to the alleged improper questioning concerning Bulera's education and background.  For that reason, the state appellate court ruled that the objection was not preserved for appellate review:

Defendant did not preserve his further contention that he was prejudiced when the prosecutor elicited significant testimony from the detective regarding his scientific background and education despite the court's ruling that the detective was not permitted to testify as an expert (*see* CPL 470.05[2] ), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15[6][a]; *People v. Valdez*, 53 A.D.3d 172, 173–176, 861 N.Y.S.2d 288, *lv. denied* 11 N.Y.3d 836, 868 N.Y.S.2d 610, 897 N.E.2d 1094).

*People v. Carducci*, 38 N.Y.S.3d at 679.

As noted earlier, where, as in this instance, "the state court rejects a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)." *Jackson v. Conway*, 763 F.3d at 132.  One such state procedural ground is New York's contemporaneous objection rule:

> "In all cases in which a state petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
>
> \*\*\*
>
> New York's contemporaneous objection rule [(N.Y. Crim. P. Law § 470.05(2))] "require[s] at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).
>
> \*\*\*
>
> New York's contemporaneous objection rule is an independent and adequate state procedural rule. "[T]here is no question that the claimed procedural bar," the failure to comply with New York's contemporaneous objection rule, "constitutes an 'independent' state ground of decision." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). Moreover, "in accordance with New York case law, application of the state's preservation rule is adequate—*i.e.*, firmly established and regularly followed." *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007).

*Hamilton v. Lee*, 707 F. App'x 12, 13–14 (2d Cir. 2017); *see also, McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at \*2 (2d Cir. Sept. 29, 2021) ("An adequate and independent finding of procedural default will bar federal habeas review of the underlying claim.  . . .  The New York courts' application of their rules regarding the preservation of legal issues for appellate review in criminal cases—codified at N.Y. Crim. Proc. Law § 470.05[2]—constitute independent and adequate state grounds for their rejection of [the petitioner's claim].") (citations and internal

quotation marks omitted), *cert. denied*, 142 S. Ct. 1235 (2022).  Here, the claim concerning Bulera's testimony is subject to the procedural default rule, and Petitioner has not attempted to demonstrate, nor does it otherwise appear, that any exception to that rule applies.

For all these reasons, Petitioner's claim concerning Bulera's testimony is denied.

The Alleged Prosecutorial Misconduct

Petitioner next contends that the prosecutor engaged in misconduct "throughout the entire trial" that denied him due process.  The Petition does not identify the alleged misconduct. However, Petitioner's state-court appeal asserted that the prosecutor improperly suggested in his opening statement that the marks on the residence door were "consistent" with the pry bar found in Petitioner's car, which, in the absence of expert testimony on that point, "invited the jury to speculate."  Petitioner's state appellate brief further contended that during closing arguments, the prosecutor "denigrated the defense by suggesting that it 'consisted of speculation of what more tests may have shown if they had been done, baseless accusations against the police and mudslinging against almost everyone involved" and improperly invited the jury to compare the marks on the door to the prybar found in Petitioner's car.  Respondent counters that the Appellate Division properly applied the relevant principles in finding that the prosecutor's comments did not deprive Petitioner of a fair trial.

The Appellate Division denied Petitioner's claim on the merits, therefore this Court "must first identify the clearly established Supreme Court principles governing this claim," which are as follows:

> First, on federal habeas review, the relevant standard is "'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden*, 477 U.S. at 180, 106 S.Ct. 2464 (quoting *DeChristoforo*, 416 U.S. at 642, 94 S.Ct. 1868). Thus, while the State has a "duty to refrain from improper methods calculated to produce a wrongful conviction," *Berger*, 295 U.S. at 88, 55 S.Ct. 629, such methods will warrant habeas relief only if they "'so infected the trial with unfairness as to make

the resulting conviction a denial of due process,'" *Darden*, 477 U.S. at 180 (quoting *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868). The habeas court must consider the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context. *See Young*, 470 U.S. at 16–17, 105 S.Ct. 1038; *Darden*, 477 U.S. at 182, 106 S.Ct. 2464 (applying *Young* ); *see also DeChristoforo*, 416 U.S. at 647–48, 94 S.Ct. 1868 (distinguishing between "ordinary trial error of a prosecutor" and the type of "egregious misconduct ... [that] amount[s] to the denial of constitutional due process"). When reviewing such claims under the "unreasonable application prong" of § 2254(d)(1), the habeas court must keep in mind that this standard is a "very general one" that affords courts "leeway in reaching outcomes in case-by-case determinations." *Matthews*, 132 S.Ct. at 2155 (quotation marks and ellipses omitted).

*Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (footnote omitted).

In the context of the instant case, none of the challenged actions and comments by the prosecutor were sufficiently egregious to deny Petitioner due process.   Accordingly, the Appellate Division's rejection of the prosecutorial misconduct claim was not contrary to, or an unreasonable application of, clearly established federal law.   Petitioner's prosecutorial misconduct claim is therefore denied.

<u>The Alleged Errors Involving the Jury Instruction</u>

Finally, Petitioner maintains that the trial court erred in failing to properly instruct the jury "that intent to enter a dwelling standing alone does not satisfy the intent to commit a crime therein" and by giving a charge that somehow "misled the jury."[21]  The Petition does not explain how the jury was supposedly confused, but the Court will assume that Petitioner is adopting the arguments in his appellate brief.  Respondent counters that this is a "state court issue" that is not cognizable in a habeas action; that the Appellate Division court denied part of Petitioner's claim on an independent and adequate state law procedural ground, namely, that Petitioner

---

[21] Am. Pet., ECF No. 4 at pp. 1–2.

failed to object to the jury charge; and, that insofar as Petitioner is now raising an argument that is different from what he argued on appeal, the claim is unexhausted.

Preliminarily, the Court observes that Petitioner's direct appeal to the Appellate Division raised two points concerning the jury instruction:  First, Petitioner argued that the trial court erred in failing to give his requested supplemental jury instruction concerning intent, discussed earlier;[22] and, second, Petitioner argued that the jury instruction actually given by the court was confusing insofar as it included the italicized language, "knowing enters *or remains* unlawfully in a  building with the intent to commit a crime therein."[23]  In denying both aspects of Petitioner's direct appeal, the Appellate Division stated:

> We further conclude that the court properly declined to give defendant's requested supplemental jury charge inasmuch as an adverse inference instruction was not warranted in this case (*see generally People v. Durant*, 26 N.Y.3d 341, 347, 23 N.Y.S.3d 98, 44 N.E.3d 173; *People v. Matos*, 138 A.D.3d 426, 427, 27 N.Y.S.3d 571, *lv denied* 27 N.Y.3d 1135, 39 N.Y.S.3d 117, 61 N.E.3d 516). In addition, defendant failed to preserve for our review his contention that the court's instructions on the burglary count were erroneous inasmuch as he did not request that the court omit the "or remains" language from its proposed charge and failed to object to the charge as given on that ground (*see People v. Smith*, 140 A.D.3d 1396, 1398, 33 N.Y.S.3d 580; *People v. Bonner*, 256 A.D.2d 1219, 1220, 684 N.Y.S.2d 364, *lv. denied* 93 N.Y.2d 871, 689 N.Y.S.2d 433, 711 N.E.2d 647). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15[6][a]; *Smith*, 140 A.D.3d at 1398, 33 N.Y.S.3d 580).

---

[22] Again, defense counsel asked that in addition to the standard pattern jury instruction for Burglary in the Second Degree, the Court instruct the jury as follows: "If the jury finds that – like a missing witness charge – if the jury finds that the People did not call or pursue witnesses regarding the issue of intent that were available to them, that the jury can consider that as evidence regarding their [(the Prosecution's)] burden as it goes to intent.  . . . The People have the burden of proving the case beyond a reasonable doubt.  One of the elements the People must prove is intent.  If the jury finds that the People failed to pursue evidence and call witnesses that it should have relating to that element, such failure can be considered when determining whether they have met their burden." Trial Transcript at p. 862.  About this requested instruction, in Petitioner's appellate brief, his attorney stated, "Here, the requested supple mental jury instruction only served to clarify the issue of intent and the prosecution's duty to prove its case beyond a reasonable doubt." Appellate Br. at p. 35.
[23] Appellate Br. at pp. 34–38.

*People v. Carducci*, 38 N.Y.S.3d at 680.  Thus, the Appellate Division denied the first aspect of Petitioner's claim on the merits, and denied the second aspect based on a procedural default, namely, the contemporaneous objection rule, discussed earlier in this Decision and Order.

Regarding the second aspect of Petitioner's claim, the Appellate Division correctly observed that Petitioner neither requested that the trial court omit the "or remains" language from the charge, nor objected to the jury charge as actually given.[24]  Accordingly, that aspect of Petitioner's habeas claim is barred by the procedural default doctrine, since the Appellate Division denied it on an independent and adequate state procedural ground (the contemporaneous objection rule) and Petitioner has not shown that any exception applies.

As for the first aspect of Petitioner's claim, involving his request for a supplemental jury instruction, the Court also finds that he is not entitled to habeas relief.

> Of course, "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus where, as here, "an error in a jury instruction is alleged, 'it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir.2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The relevant question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147, 94 S.Ct. 396.

*Smith v. Artus*, 610 F. App'x 23, 25–26 (2d Cir. 2015).

> Consistent with *Cupp*, we have held that "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir.2001) (quoting *Casillas v.*

---

[24] Petitioner's appellate brief recognized that there had been no such objection. *See*, Appellate Br. at p. 38 ("[A]ppellant's conviction must be reversed notwithstanding any lack of an objection[.]").

*Scully*, 769 F.2d 60, 63 (2d Cir.1985)); *see also Blazic v. Henderson*, 900 F.2d
534, 541 (2d Cir.1990) ("A mere error of state law does not deny a defendant his
right to due process.").

*Gibbs v. Donnelly*, 402 F. App'x 566, 568 (2d Cir. 2010).

Here, Petitioner maintains that he wanted the trial court to give the requested
"supplemental instruction" "to clarify the issue of intent and the prosecution's duty to prove its
case beyond a reasonable doubt." Appellate Brief at p. 35.  However, Petitioner has not shown
that he was entitled to the supplemental instruction under New York law, or that the instruction
the court gave on those points was an inaccurate statement of New York law.  Rather, it appears
the trial court properly instructed the jury, concerning both the prosecution's duty to prove its
case beyond a reasonable doubt and the intent required to support a conviction for Burglary in
the Second Degree, using the New York Pattern Jury Instructions. Trial Transcript at pp. 879,
963-966, 971-972, 975-977, 988-991.[25]  Nor has Petitioner otherwise shown that the trial court's
refusal to give the requested instruction "so infected the entire trial that the resulting conviction
violated due process."  Consequently, Petitioner's claim on this point is also denied.

## CONCLUSION

The application under 28 U.S.C. § 2254 is denied.  Pursuant to 28 U.S.C. § 2253, the
Court declines to issue a certificate of appealability, since Petitioner has not made a substantial
showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C.
§ 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to
appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S.
438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on
motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24

---

[25] As already indicated, Petitioner made no objection to the jury instruction that was given, though he had
previously objected to the Court's denial of his request to give the supplemental instruction.

of the Federal Rules of Appellate Procedure.  Finally, the Clerk of the Court is directed to close

this case.

      So Ordered.

Dated:Rochester, New York
     April  29, 2022

                      ENTER:

                      CHARLES J. SIRAGUSA
                      United States District Judge